O4QUCUSC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
In re:

CUSTOMS AND TAX ADMINISTRATION
OF KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX
SCHEME LITIGATION,

                                         18-MD-2865 (LAK)

                                         Teams Conference

------------------------------x
                                         New York, N.Y.
                                         April 26, 2024
                                         10:30 a.m.

Before:

                   HON. LEWIS A. KAPLAN,

                                         U.S. District Judge


                         APPEARANCES

HUGHES HUBBARD & REED LLP
     Attorneys for Plaintiff SKAT
BY:  MARC WEINSTEIN
     NEIL OXFORD
     WILLIAM MAGUIRE

DEWEY PEGNO & KRAMARSKY LLP
     Attorneys for Defendant, Michael Ben-Jacob
BY:  THOMAS DEWEY
BY:  ELLIOT PETERS

KOSTELANETZ & FINK, LLP
     Attorneys for Defendants, John van Merkensteijn, Basalt
     Ventures LLC Roth 401(K)
BY:  PETER NEIMAN
     NICHOLAS BAHNSEN
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

APPEARANCES (Continued)


WILMER HALE
    Attorneys for Defendants, Richard Markowitz, RJM Capital
    Pension Plan
BY: ALAN SCHOENFELD
    ANDREW DULBERG

KATTEN MUNCHIN ROSENMAN, LLP
    Attorneys for Defendants, Robert Klugman, RAK Investment
    Trust
BY: MICHAEL ROSENSAFT
    DAVID GOLDBERG

K&L Gates LLP
    Attorneys for American Investment Group of New York, L.P.
    Pension Plan, Stacey Kaminer, Robert Crema, Acer
    Investment Group, LLC
BY: BRANDON DILLMAN

BINDER & SCHWARTZ LLP
    Attorneys for Third-Party Defendant, EDF & Man Capital
    Markets Ltd.
BY: NEIL BINDER
    GREG  PRUDEN

JOHN HANAMAIRIAN
    Attorney for Acorn Defendants & Cambridge Way Defendants

KOSTELANATZ, LLP
    Attorneys for Defendants John Doscas - Sterling Alpha
    Pension and Defendants David Freelove - Del Mar Pension
    Plan and Federated Pension Plan
BY: SHARON McCARTHY

1          THE COURT:  Good morning, everybody.

2          I'm calling about this request for letters rogatory.
3  And these are all lists, I think, but, I thought it better to
4  straighten things out before rather than after you all go off
5  to do this, if that's what's going to happen.

6          First of all, Mr. Weinstein, I don't really understand
7  the last sentence of the top paragraph on page 1 of the
8  defendants' memorandum.  You join in the motion provided that
9  certain things that haven't happened yet and may or may not
10 happen in the future happen?  What happens if they don't happen
11 in the future?  Do you then retroactively don't join in the
12 motion?

13         MR. WEINSTEIN:  Your Honor, I think the two --
14 essentially the two conditions that we had for joining, one was
15 just that we don't object to them taking the deposition as long
16 as, obviously, we have the right to also examine.  So that was
17 just -- I just want to make that clear that we would have the
18 right to cross-examine.

19         If it turns out for some reason that the Danish court
20 did not permit that, I think we would ultimately argue to the
21 Court that his testimony should not be admissible because we
22 didn't have the right to examine, but that -- so we're not
23 saying that the proceedings shouldn't go forward on that basis.
24 It just may -- the outcome of it, depending on how the Danish
25 court feels with it, may impact, you know, our argument on

1   admissibility.
2           THE COURT:  That's what I thought you were getting at.
3           So in substance what this is intended to say is that
4   you join in the motion but without prejudice to any objection
5   you might have to the use of the testimony in due course, yes?
6           MR. WEINSTEIN:  That's a fair way of putting it, yes,
7   your Honor.
8           I think the second issue was, again, it's just that we
9   did not want -- nobody knows how long this might take,
10  hopefully, it's done expeditiously, but, of course, we don't
11  know anytime you have letters rogatory when it might happen,
12  especially with someone who is in a foreign prison facility.
13          We just wanted to make clear to the Court, I don't
14  think this would be part of what goes to the Danish court, but
15  that we do not want this to delay our trial.  So if it turns
16  out that this deposition, for some reason, can't take place,
17  one, ever, but, secondly, you know, past when we're going to
18  start our trial, our position is the trial should start.  This
19  is not a delay option.
20          THE COURT:  Well, what's the defendant's position on
21  that?
22          MR. DEWEY:  Good morning, your Honor.
23          Tom Dewey for Mr. Ben-Jacobs speaking for the
24  defendants.
25          We think this is critical testimony.  We have every

          interest in moving it along as expeditiously as possible.  We
          are hopeful, as we've discussed with our colleagues at Hughes
          Hubbard, that they could use their good offices representing
          SKAT to facilitate getting the testimony as quickly as
          possible.  There are prior instances where we were able to
          secure testimony by letters rogatory at Hague Convention within
          a couple of months.  So we absolutely intend to move this along
          as rapidly as possible.
                    THE COURT:  Well, I assume that's right.  But what
          happens if it doesn't work?
                    MR. DEWEY:  Well, your Honor, I would say, let's kind
          of cross that bridge when we come to it.  We think it's
          critical testimony.  We believe that the jury and your Honor
          should hear Mr. Shah's testimony.  I think for present purposes
          we want to move it along as quickly as possible.  And if we hit
          any road bumps in that process, we'll come right back to your
          Honor.  We're mindful, obviously, of the January trial date.
          We are prepared to try the case but we do think Mr. Shah's
          testimony is very, very important.
                    THE COURT:  And do the defendants all consent to the
          trial going forward, regardless of whether the testimony has
          been obtained by them?
                    MR. DEWEY:  Well, I'm not sure I can speak for all of
          my colleagues on that point.  I think our -- my position, at
          least, Mr. Ben-Jacob's position, is that we should do

everything possible to secure this testimony so that Mr. Shah can be presented to your Honor and the jury on January 7th.

THE COURT: Mr. Dewey, I took that as given, but I asked a specific question.

MR. DEWEY: Yes. I think I would need to speak to my cocounsel on that, your Honor. We do have a matter of eight or nine months. So I'm very hopeful that we would be able to accomplish that given the track record of accomplishing Hague Convention requests quickly in this case.

THE COURT: Well, look, I have a significant concern here, and that is that according to your papers he's been in Holland or Denmark for four months before you filed this application. And I don't see why, with a trial already scheduled and with presumably the defense knowing full well where he was all along, I should throw up a potential road block to moving this case to a disposition. This is pending here now for over five years.

MR. DEWEY: Understood, your Honor. We did raise the matter with you at our last conference, which is why we brought on the application as promptly as possible under the circumstances, and I am very hopeful that we're able to secure the testimony promptly, particularly since we do have the cooperation of our friends at Hughes Hubbard.

THE COURT: Well, I have reservations about signing this. Obviously, the testimony is potentially very important,

1    but it should have been done a long time ago.  And now what
2    you're trying to do is have your cake and eat it too.  The cake
3    is his testimony and the eating is preserving your ability to
4    try to stall the trial, if, for one reason or another, the
5    testimony isn't obtained in advance of January 7th.
6    Everybody wants it to be, but what if?
7              MR. DEWEY:  To be clear, your Honor, we do not have
8    any interest in stalling the trial.  When Mr. Shah became
9    present and president available, if you will, in Denmark, we
10   brought it to your Honor's attention and we made the
11   application.  So we want to go forward with the testimony as
12   quickly as possible.  We're very mindful of the trial date your
13   Honor set.  And we have every intent of being able to meet that
14   date, particularly if we get cooperation from the folks at
15   SKAT.
16             THE COURT:  I'll think about it, frankly.  And I would
17   like to hear from the defendants on whether they're going to
18   all commit to proceeding to trial on January 7th unless
19   otherwise ordered regardless of whether this is completed.
20             MR. DEWEY:  Okay.
21             THE COURT:  I don't know what the Danish courts will
22   do.
23             MR. WEINSTEIN:  Your Honor, may I raise two other
24   issues related to this?
25             And, of course, look, we will cooperate as much as we

can to do things expeditiously, but we've heard many time from defendants before that because SKAT is part of the Danish government, it must be able to influence, you know, what happens in this or other situations. It's just not the case. Of course, we will do what we can but I can't promise at all that we have some kind of persuasion over either the courts of or the criminal justice system to make this happen on any particular timeframe.

The two additional items, your Honor, one is just if the Court, and I apologize because it's not in the papers, if the Court was to grant the request, there is a list of topics, you know, they -- defendants have proposed some, we added a few, it was a joint proposal on the topics. There is one other topic, to the extent that the defendants still are objecting to the admissibility of documents from Sanjay Shah's entity as not potentially authentic, we would like to add to the list, you know, the authenticity of documents coming out of his shop. I think it's related to the substantive subject matter topics, but we just want to make clear that this is something we would want to ask him, to the extent that the defendants are still even still challenging that. That's one. And we can send your Honor language to that effect very quickly.

The second is a second potential deposition. We had raised this with the defense when they sent us draft papers on the Shah motion, which is, I think as your Honor now knows,

1    there's another individual who was indicted, Mark Patterson,
2    who worked at Solo Capital with Sanjay Shah. He, similar to
3    Shah, was arrested, extradited. He ultimately pled guilty. I
4    think we put that in our most recent submission to the Court on
5    update on foreign proceedings. We would -- if the defendants
6    are going to take Mr. Shah's deposition, and in light of the
7    fact that we expect Mr. Shah to say that while there were no
8    shares in this closed loop trading, it was somehow legal, it
9    was not a problem, Mr. Patterson, one of his inside associates,
10   pled guilty to the offense in Denmark and said that, you know,
11   he determined that this was a fraud because it was a closed
12   loop system of purported trading.
13            In fairness, as a counterpoint to what Mr. Shah might
14   say, we would like to take Mr. Patterson's deposition now that
15   he's out from under his criminal case other than the fact that
16   he's pled guilty and is in prison. It would be on the same
17   expeditious manner. He's being held in a Danish prison. We
18   had sought defendants' consent to include it in this motion
19   earlier this week. As is their right, they objected to that.
20   So we would, if the Court is inclined to grant the motion on
21   Mr. Shah, we would, as soon as Monday, file a motion seeking to
22   also have Mr. Patterson's deposition taken.
23            THE COURT: Mr. Dewey, what do you want to say?
24            MR. DEWEY: Okay. On the additional topic that
25   Mr. Weinstein has raised, I do not think that that would be a

problem on behalf of the defendants. That's not something that we were going to have a problem with at all, if they want to examine Mr. Shah on additional issues, although we're happy to confirm that.

As to Mr. Patterson, the position is rather than different. Mr. Patterson was not disclosed by anyone as a person with knowledge, and Mr. Patterson was, in fact, in the U.K., and accessible to SKAT for years, to your Honor's point about delay, and yet there was no application made to take his testimony during the discovery period.

The third point, just to emphasize, your Honor, we think it's really important that Mr. Shah testify at this trial. He testified for days in Denmark about this strategy. He testified that he believed it was lawful, that he had vetted it with a number of different people, and my understanding is that he's going to testify similarly in the U.K. proceeding. It is very important to us, Judge, that we be able to present that testimony.

THE COURT: Well, I imagine Mr. Weinstein would say it's very important to them that they be permitted to present the testimony of Mr. Patterson.

MR. DEWEY: I mean, I look forward to seeing the application and we'll respond to the application. We think there are very significant differences between Mr. Patterson and Mr. Shah, but, obviously, they have every right to seek his

1    testimony.

2             THE COURT:  You're a master at not committing to
3    anything.

4             MR. DEWEY:  Occupational hazard, Judge Kaplan.

5             THE COURT:  Pardon?

6             MR. DEWEY:  I said, occupational hazard, you Honor.

7             THE COURT:  Well, yes.

8        What about the authenticity problem?

9             MR. DEWEY:  I don't think we're going to have a
10   problem with that.  I would just like to confirm with my
11   codefendants, but if there are additional topics they want to
12   cover with Mr. Shah, I don't expect that would be a problem.

13            THE COURT:  Well, what about getting the authenticity
14   resolved rather than going to Europe to take testimony on
15   authenticity?

16            MR. DEWEY:  Well, we can do that as well.  I'm happy
17   to confer with our colleagues on it, your Honor.

18            THE COURT:  Okay.  Let me move on to two other
19   questions.  Your proposed letter lists subjects, not questions,
20   and, thus, assumes that if a Danish court grants the letter, it
21   will let counsel examine.  Now, that's often true, and it's not
22   always true.  I don't know about that Danish courts in
23   particular, but I've had some experience with letters rogatory
24   and some countries will insist or some judges will insist on
25   conducting the examination, and I find it very hard to see that

1    there would be much value to either side from this deposition
2    if the Danish courts were to conduct the examination
3    themselves.  Am I mistaken?  You have to give a list of
4    questions for them to ask.
5             MR. DEWEY:  It's Tom Dewey for Mr. Ben-Jacob.
6             I take your Honor's point.  I'm not sure I entirely
7    agree.  I would respectfully suggest that that is a bridge we
8    can cross, you know, once the letters are signed and we confer
9    with our colleagues at Hughes Hubbard.
10            THE COURT:  I hope it's not in Baltimore.
11            MR. DEWEY:  As do I, your Honor.  As do I, your Honor.
12            And the precise mechanics of how the testimony will
13   work, obviously, is something we're going to have to work out
14   with Hughes Hubbard, my cocounsel, and the folks in Copenhagen
15   or Glostrup or wherever we take him.  I think, as to whether
16   there would be value in the judge asking questions, I would
17   reserve on that, and I think we just have to try and come up
18   with a procedure that is workable and that will allow us to
19   present the testimony in a way that is useful to your Honor and
20   the jury.
21            THE COURT:  I think you better get this worked out too
22   before I sign anything because what I see here is potential for
23   endless delay, which I'm unlikely to accommodate.
24            Now, one, the matter of utter form, on page 9, you
25   have a statement about the United States recognizing its

1    testimonial privilege against criminal self-incrimination.
2    Obviously, I know what that means, but I'm not sure a Danish
3    judge does.  And a more accurate statement, in any event, would
4    probably be something like United States law in certain
5    circumstances recognizes a testimonial privilege against
6    compulsory self-incrimination.  Certainly, there's no privilege
7    for not taking a plea.  And I would have simply interlineated
8    that, but I have a feeling that if I ultimately sign the
9    letter, the Danish authorities are not going to be very happy
10   with one that has handwritten changes in it.  So you might take
11   that into account.
12            I'm not going to do anything until I get a report from
13   you on all the issues that we've raised and an application from
14   the plaintiffs, if they're going to make it.  And as of now,
15   you're on trial for January 7th, and if this takes the whole
16   summer, you're still on trial January 7th.  I hope you all
17   understand that.
18            MR. DEWEY:  Absolutely understood, your Honor.
19            THE COURT:  Okay.  I thank you.  I hope you have a
20   good weekend.
21            MR. WEINSTEIN:  Your Honor, Marc Weinstein, may I
22   just -- may I add one comment?
23            Just with respect to the procedure that your Honor
24   asked about, as far as the Danish judge, how they may proceed
25   if the deposition goes forward, I don't think we will know that

1    until there is a judge assigned because it's our understanding
2    that it's within the discretion of any particular judge.  There
3    is very little precedent in Denmark for how these actually play
4    out.  And so we just won't know.  It will be entirely up to the
5    judge's discretion.  So that -- we will not be able to resolve
6    that in advance.
7              THE COURT:  Sure.  Here you're asking me to sign a
8    letter rogatory knowing that the possible outcome is that the
9    judge will not permit counsel to conduct examination in the
10    U.S. style, but will do it himself in whatever style he or she
11    wishes to do it, and you don't have in here a fall-back
12    position beyond giving him or her a list of subject matters.
13    And what happens if it turns out he runs down the list in an
14    hour or an hour and ten minutes, you get nothing much of value,
15    probably nothing admissible, that prejudges something which I
16    don't mean to prejudge, and then you want to come back to me in
17    December, to say, oh, we want to start over all again with a
18    new letter rogatory.  Doesn't it makes sense to provide for
19    that now?  I leave that as a rhetorical question, but I look at
20    this and I see quite a number of potential problems that at
21    least could threaten the schedule.
22              MR. WEINSTEIN:  Yes, Marc Weinstein, your Honor,
23    understood.  And we will discuss with defense counsel what, if
24    anything, can be done about that in advance and provide your
25    Honor with an update.

1          The second thing is just, because Mr. Dewey made note
2     of this before, about the difference between Mr. Shah and
3     Mr. Patterson, in their view Mr. Shah being unavailable until
4     recently, first, as your Honor noted, he's been available at
5     least in Denmark for four months, but they've actually made no
6     showing in their papers that he was unavailable when he was in
7     Dubai.  They cite two cases, one from 22 years ago and one
8     from, you know, 15 years ago that was open ended, it wasn't
9     clear how those actually resolved, but that -- at those dates,
10    there was no provision for letters rogatory, but there is
11    actually no showing that during the last five years, he would
12    have been unavailable had they chosen to pursue it.  We're not
13    objecting on that ground.  We're okay if they want, you know,
14    to try to get a deposition if it doesn't delay the trial.  But
15    if that's the argument as to why Mr. Patterson shouldn't be
16    deposed, well, then, they're on equal footing there, there is
17    no actual difference.
18          MR. DEWEY:  Obviously, your Honor, Tom Dewey, United
19    Kingdom and Dubai are differently situated in this regard,
20    dramatically so.  But as Mr. Weinstein has joined in the
21    application with respect to Mr. Shah, so, from that
22    perspective, I don't think it's a live issue.
23          THE COURT:  Well, I'm not sure that that's right.
24    You're asking me to threaten to upset an apple cart that has
25    taken a very long time to get this close to the destination,

1   and you're asking me to do it on the premise that you couldn't
2   have gotten at him in Dubai, and it's relevant to me to know if
3   that's really true.
4           MR. DEWEY:  We're happy to address it, your Honor,
5   but, to be clear, as Mr. Weinstein mentioned to your Honor at
6   the top, this is a joint application to the Court.
7           THE COURT:  Well, I understood what Mr. Weinstein
8   said.  It was a very interesting sentence in that memorandum
9   that couldn't go unnoticed.
10          Okay.  I thank you.  I'm not going to set a time limit
11  on this because you have your built-in need to move fast.
12          MR. DEWEY:  We do, indeed, your Honor.
13          THE COURT:  Godspeed.  Okay.  Thank you.
14          MR. DEWEY:  Thank you very much.
15          MR. WEINSTEIN:  Thank you, your Honor.
16          THE COURT:  Bye bye.
17                              o0o